UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jerry Davis, #270224, | ) C/A No. 3:12-1729-MGL-JRM |
| Plaintiff, | ) |
| vs. | ) Report and Recommendation |
| Miss Buchanan, | ) |
| Defendant. | ) |

## *Background of this Case*

Plaintiff, who is proceeding *pro se*, is an inmate at the Evans Correctional Institution of the South Carolina Department of Corrections. Defendant is a Food Supervisor at the Evans Correctional Institution. The "STATEMENT OF CLAIM" portion of the Complaint reveals that this civil rights action arises out of Plaintiff's dissatisfaction with food provided to him because there was hair in his food on May 20, 2012, and on May 21, 2012. Plaintiff also complains about his "soft [food] diet" and the lack of meat on May 21, 2012.

Plaintiff's answers on page 2 of the Complaint also show that he filed a grievance on May 20, 2012, which was the day that he signed the Complaint.[1] In his prayer for relief, Plaintiff seeks one hundred thousand dollars from Defendant.

## *Discussion*

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Prison Litigation Reform Act. The review[2] has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25, 31–35 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324–25 (1989); *Haines v. Kerner*, 404 U.S. 519, 519 (1972)(*per curiam*); *Nasim v. Warden, Maryland House of Corr.*, 64 F.3d 951, 953–56 (4th Cir. 1995)(*en banc*); *Todd v. Baskerville*, 712 F.2d 70, 71–74 (4th Cir. 1983); *Loe v. Armistead*, 582 F.2d 1291, 1295–96 (4th Cir. 1978); and *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 90–95 (2007)(*per curiam*); *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980)(*per curiam*); *Cruz v. Beto*, 405 U.S. 319, 321–23 (1972)(*per curiam*). When a federal court is evaluating a *pro se* complaint or petition, a plaintiff's or petitioner's allegations are assumed to be true. *Merriweather v. Reynolds*, 586 F. Supp. 2d 548, 554 (D.S.C. 2008). Nonetheless, a litigant must plead factual content that allows the court to draw the reasonable inference that the defendant or respondent is plausibly liable, not

---

[1] Although some of the allegations in the "STATEMENT OF CLAIM" portion of the Complaint concern May 21, 2012, the signature page (ECF No. 1, at page 6) of the Complaint is dated May 20, 2012.

[2] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 DSC, the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Court.

merely possibly liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). Even when considered under this less stringent standard, the Complaint is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court of the United States has held that, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also Booth v. Churner*, 531 U.S. 731, 741 (2001) (PLRA requires administrative exhaustion even if grievance procedure does not allow monetary damages and prisoner seeks only monetary damages, so long as grievance tribunal has authority to take some responsive action). Although the lack of exhaustion of administrative remedies is considered an affirmative defense and not a jurisdictional infirmity or a pleading requirement, if the lack of exhaustion is clearly apparent from the face of the prisoner's complaint, *sua sponte* dismissal prior to service of the complaint may be appropriate. *See Jones v. Bock*, 549 U.S. 199, 215–224 (2007) (finding that inmates are not required to specially plead or demonstrate exhaustion in their complaints); *Anderson v. XYZ Corr. Health Serv.*, 407 F.3d 674, 683 (4th Cir. 2005) (noting that it is possible that a prisoner's complaint may clearly show that the prisoner has not exhausted his administrative remedies and under those circumstances *sua sponte*

dismissal would be appropriate); *cf. Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655–56 (4th Cir. 2006) (*in forma pauperis* proceedings "implicate important judicial and public concerns not present in the circumstances of ordinary civil litigation."). The Supreme Court held that the PLRA "seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (proper exhaustion of administrative remedies is necessary).

Here, lack of exhaustion is clearly apparent from the face of the complaint. Plaintiff states he had not received a final agency/departmental/institutional answer or determination concerning the matters alleged. Complaint at 3. Plaintiff filed his grievance on the same day that he signed the Complaint, May 20, 2012.[3] As a result, this case is subject to summary dismissal *without prejudice* for failure to exhaust administrative remedies. This action should be dismissed *without prejudice*

---

[3] In order to exhaust the SCDC administrative remedy process, after unsuccessful attempts at informal resolution of the problem(s), **(1)** an inmate must fill out a Form 10-5 (Step 1 Grievance form) to explain his complaint and give the form to an employee designated by the Warden within fifteen days of the alleged incident; **(2)** the grievance must then be entered into SCDC's automated system, and the Institutional Inmate Grievance Coordinator ("IGC") notified so that the information in the automated system can be finalized and an attempt to informally resolve it before sending it to the Warden can be made within ten working days from the time the grievance is submitted; **(3)** the Warden should respond to the inmate in writing within forty days of the Warden's receipt of the Step 1 grievance and then the IGC has five working days to provide the Step 1 response to the inmate; **(4)** the inmate may then appeal the Warden's response by completing a Form 10-5a (Step 2 Appeal) and submitting it to the IGC within five "calendar days" of the inmate's receipt of the response; **(5)** the IGC then notifies the Inmate Grievance Branch of the Step 2 appeal and the Branch has another five "calendar days" to get the Step 2 appeal to the responsible SCDC official (the Division Director of Operations) for a response; **(6)** the Division Director of Operations then has sixty days from the day the appeal was received by the IGC at the institution to respond to the Step 2 grievance, and finally, **(7)** then there is another five days for the IGC to serve the inmate with the Step 2 response. SCDC Policy/Procedure GA-01.12, at §§ 11; 13.1-13.6 (Oct. 1, 2010). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. *Id.* at § 13.6.

4

to allow Plaintiff the opportunity to file a new suit, if necessary, after exhaustion requirements are met.

Here, Plaintiff has not alleged any claims concerning his being served a soft and/or meatless diet for one or two days that rises to the level of a constitutional violation. He has not alleged an injury as a result of his diet. It is well-established that inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it. *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985). Assuming a diet's nutritional adequacy, prison officials have the discretion to control its contents. *See Divers v. Dep't of Corrs.*, 921 F.2d 191, 196 (8th Cir. 1990); *Madyun v. Thompson*, 657 F.2d 868, 874–75 (7th Cir. 1981) (allegation that food served to segregated prisoners was cold and not on the menu served to general prison population was insufficient to state an Eighth Amendment violation); *Hoitt v. Vitek*, 497 F.2d 598, 601 (1st Cir. 1974) (prisoners' allegation of deprivation of hot meals failed to state a claim of cruel and unusual punishment, given the stipulation that three meals were provided daily); *Prophete v. Gilless*, 869 F. Supp. 537, 538 (W.D. Tenn. 1994) (food which was cold by the time it was served did not constitute cruel and unusual punishment).

Additionally, the intermittent presence of foreign objects, such as a strand of hair, in food is not a constitutional violation. *See LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) ("[t]he fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); *see also Blakely v. Wards*, Civil Action No. 4:10-718-RMG-TER, at *3–*4 (D.S.C. May 10, 2011) (rejecting constitutional claim based on fact that prison food service workers did not wear hair nets), *adopted*, 2011 WL 2559536

(D.S.C. June 28, 2011); *Reed v. Olson*, Civil Action No. 4:09-3126-JFA-TER, at *4 (D.S.C. Jan. 19, 2011) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."), *adopted*, 2011 WL 742509 (D.S.C. Feb 24, 2011); *Lamb v. Lieber Corr. Inst. Kitchen Staff*, Civil Action No. 8:09-1805-CMC-BHH, 2009 WL 2513500, at *2–*3 (D.S.C. Aug. 13, 2009) (collecting cases).

## *Recommendation*

Accordingly, it is recommended that the District Court dismiss the above-captioned case *without prejudice* and without service of process. Plaintiff's attention is directed to the Notice on the next page.

July 27, 2012  
Columbia, South Carolina

Joseph R. McCrorey  
United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

Plaintiff is advised that he may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Larry W. Propes, Clerk of Court**
> **United States District Court**
> **901 Richland Street**
> **Columbia, South Carolina 29201**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).